**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MICHAEL K. SZABO,
Petitioner,

v.

No. 94-2414

NATIONAL TRANSPORTATION SAFETY
BOARD; ADMINISTRATOR, FEDERAL
AVIATION ADMINISTRATION
Respondents.

On Petition for Review of an Order
of the Federal Aviation Administration.
(SE-12794)

Argued: November 1, 1995

Decided: February 5, 1996

Before ERVIN, Chief Judge, WILKINS, Circuit Judge, and
MICHAEL, Senior United States District Judge for the Western
District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Jay Fred Cohen, Baltimore, Maryland, for Petitioner.
Susan S. Caron, Enforcement Division, Office of the Chief Counsel,
FEDERAL AVIATION ADMINISTRATION, Washington, D.C., for
Respondents. **ON BRIEF:** Kathleen A. Yodice, Acting Manager,
Appellate Branch, Enforcement Division, Office of the Chief Coun-

sel, FEDERAL AVIATION ADMINISTRATION, Washington, D.C., for Respondents.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Petitioner Michael K. Szabo asks that we review an order of the National Transportation Safety Board ("the Board") suspending for thirty days his airman certificate. Finding no error, we affirm.

I.

On July 2, 1988, Marilyn Doncarlos landed her Mooney aircraft at Bay Bridge Airport in Stevensville, Maryland. As she turned off the runway on her "rollout," she noticed another aircraft, a Cherokee 180 operated by Szabo, approximately 300 feet behind her on the same runway she was leaving. Believing that Szabo's landing his aircraft so close to her aircraft violated Federal Aviation Administration ("FAA") safety regulations, Ms. Doncarlos reported the incident to the Baltimore Flight Standards District Office.

An informal conference was held on the incident. Szabo maintains that at this conference, the investigating inspector, Mr. Klipa, stated that the FAA should drop the case against Szabo because there was "nothing there." JA 179. Nonetheless, the FAA, on September 2, 1992, issued an order suspending Szabo's license for 60 days. Szabo appealed the order to the Board. An Administrative Law Judge (ALJ) conducted a hearing on the matter on June 4, 1993. Mr. Klipa was scheduled to testify at the hearing before the ALJ. The Administrator notified Szabo that Mr. Klipa would testify that in his judgment, Szabo's operation was careless. However, on the day before the hearing, the Administrator informed Szabo that Mr. Klipa had a medical

2

condition and could not be present at the hearing. The Administrator told Szabo that Mr. Klipa's supervisor, Mr. Galo, would testify in Mr. Klipa's absence essentially to the same effect. Szabo moved for a continuance of the hearing on the grounds that Mr. Galo could not testify about what Mr. Klipa had stated at the informal conference. The ALJ denied the motion for a continuance.

The ALJ ultimately concluded that Szabo had landed his aircraft approximately 300 feet behind Ms. Doncarlos' aircraft while her aircraft was still on its "rollout" off the runway. The ALJ found that this conduct violated FAA safety regulations, specifically 14 C.F.R. §§ 91.65(a) and 91.9 (1988).[1] On appeal of the ALJ's decision, the Board affirmed the ALJ's holding that Szabo violated § 91.9, but it overruled the ALJ's finding that Szabo violated § 91.65(a). Accordingly, the Board reduced the length of the license suspension from 60 days to 30 days.

Szabo now appeals the Board's decision to this court. Szabo cites two potential grounds for reversal of the Board's decision. First, Szabo argues that there is not substantial evidence in the record to support the Board's determination that Szabo violated § 91.9. Second, Szabo argues that the Board abused its discretion in failing to find reversible error for several alleged procedural gaffes at the trial stage.

II.

We must affirm the decision of the Board unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Hernandez v. Natl Transp. Safety Bd. , 15 F.3d 157, 158 (10th Cir. 1994); 5 U.S.C. § 706(2)(A). The Board's findings of fact are conclusive if supported by "substantial evidence." 49 U.S.C.App.

---

[1] These sections were recodified on August 18, 1989, effective August 18, 1990. Section 91.65(a), which became 14 C.F.R. § 91.111(a), provides that "No person may operate an aircraft so close to another aircraft as to create a collision hazard." Section 91.9, which became 14 C.F.R. § 91.13(a), provides that "No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." This opinion makes reference to the regulation sections that were in effect on July 2, 1988, the date the regulatory violations occurred.

§ 1486(e); North Carolina v. Fed. Aviation Adm., 957 F.2d 1125, 1128 (4th Cir. 1992). Substantial evidence is "`such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" NLRB v. Peninsula General Hospital Medical Center, 36 F.3d 1262, 1269 (4th Cir. 1994) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

In this case, substantial evidence supports the Board's finding that Szabo violated § 91.9. Szabo himself appears to admit that the two planes occupied the same runway simultaneously. JA 177. Moreover, Ms. Doncarlos testified that she saw Szabo's plane 300 feet behind her on the runway. The ALJ found Ms. Doncarlos "forthright and candid," and her testimony "not only . . . logical, and compelling, but . . . persuasive." JA 160-161. Thus, the issue for the court is whether there is "substantial evidence" to support the Board's conclusion that landing a plane while another aircraft is still on its "roll-out" off the runway constitutes operation of an aircraft "in a careless or reckless manner so as to endanger the life or property of another." 14 C.F.R. § 91.9.

Szabo is hard-pressed to argue successfully that the Board's finding that such conduct is careless constitutes an abuse of the Board's discretion. The Board noted that the maximum usable runway space at the Bay Bridge Airport is about 2,000 feet in length by 60 feet in width. JA 177. The Board determined that this is too small an area in which to stop safely a plane that is loaded down with three passengers, as was Szabo's aircraft. Id. This court does not lightly discount the Board's judgment. Indeed, the potential for an accident is self-evident. Moreover, the conclusion that landing an aircraft under such conditions is careless comports with the Board's precedent. In Administrator v. Magee, 2 NTSB 1364 (1975), the Board held that the operator of an aircraft violated § 91.9 by touching down 150-300 feet behind another aircraft. Finally, the Board concluded that even if Szabo did not see Ms. Doncarlos' plane on the runway, he was still careless because a proper scan would have revealed Ms. Doncarlos' plane in the midst of its "rollout." JA 177. In short, there is substantial evidence to support the Board's finding that "in either event there was carelessness [by Szabo] -- either deficient scanning and planning of the approach or poor judgment in deliberately landing too close behind an aircraft on rollout." Id.

4

III.

Szabo argues that the Board abused its discretion by failing to find that the ALJ committed reversible error. Specifically, Szabo argues the Administrator's last-minute switch of expert witnesses prejudiced him because Szabo could not impeach Mr. Klipa with his alleged statement at the informal conference that the FAA should drop its case against Szabo because there was "nothing there." Szabo also alleges that the switch was made in bad faith because Mr. Klipa was in fact at work when the hearing was held and could have attended the hearing.[2] Moreover, Szabo argues that the ALJ erred in refusing to allow Szabo to call the FAA's attorney to testify that Mr. Klipa was indeed available to testify.

The Board concluded that the switch did not prejudice Szabo because all of the Administrator's factual evidence was adduced through Ms. Doncarlos. And the ALJ stated that the conclusions drawn from those facts would not have been altered by testimony indicating that Mr. Klipa made the alleged comment at the informal conference. JA 180.

The Board did not abuse its discretion in ruling that the ALJ did not commit reversible error. The record indicates that the Administrator informed Szabo of the flavor of Mr. Klipa's expected testimony. JA 16. The actual testimony given by Mr. Galo was consistent with Mr. Klipa's expected testimony. Thus, Szabo cannot argue that he was surprised by Mr. Galo's testimony -- the usual form of prejudice when a witness is presented to opposing counsel at the last moment. Rather, Szabo argues that he was prejudiced by his inability to cross-examine Mr. Klipa. However, the ALJ concluded -- and the Board agreed -- that even if Mr. Klipa had testified to all that Szabo believes he would have testified to, the outcome of the hearing would have been the same.

_____

[2] At argument, counsel for Szabo made several representations to the court concerning details of a telephone conversation counsel allegedly had with Mr. Klipa prior to the hearing before the ALJ. We do not consider the statements allegedly made by Mr. Klipa in the course of this telephone conversation since they are not part of the record.

Given this fact, we conclude that if the ALJ committed any error, it was harmless. Accordingly, the Board did not abuse its discretion in upholding the rulings of the ALJ. We therefore affirm the Board's decision.

AFFIRMED

6